FILED'11 AUG 11 12:02USDC-ORE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

JELD-WEN HOLDING, INC., an
Oregon corporation,

        Plaintiff,        Civ. No. 11-3043-CL

                                **ORDER**

    v.

JAIME RIBAS, an individual,

        Defendant.

---

**PANNER, J.**

On July 26, 2011, I presided over a show-cause hearing regarding Jeld-Wen's request for a preliminary injunction. For the reasons that follow, Jeld-Wen's request for a preliminary injunction (#5) is DENIED. Additionally, Jaime Ribas motion to dismiss for lack of personal jurisdiction (#13) is DENIED.

1 - ORDER

## BACKGROUND

In 1991, Puertas Norma, S.A. (a Spanish door-making company) hired defendant Jaime Ribas as Managing Director. Plaintiff Jeld-Wen owns Norma. In 1994, Ribas was appointed as a board member of Norma. In March 2003, Jeld-Wen notified Ribas of his eligibility in Jeld-Wen's stock purchase program. Ribas voluntarily signed a Stockholder Agreement. Ribas financed the stock purchase with $16,048 in cash and a loan from Jeld-Wen of $70,000.

The 2003 agreement did not contain a provision regarding Jeld-Wen's confidential information. The 2003 agreement did not contain a covenant not to compete. The 2003 agreement lacked a forum selection clause.

In March 2004, Jeld-Wen offered Ribas and other key managers a gift of 25 shares of stock (worth $12,724). Although the gift was contingent on Ribas remaining employed with Jeld-Wen for three years, the gift came with no restrictions on Ribas' future employment with competitors of Jeld-Wen or Norma. Ribas voluntarily agreed to accept the stock gift.

In April 2005, Jeld-Wen decided to revise its stock ownership program. Jeld-Wen produced a revised stockholder agreement (the "Agreement") for Ribas to sign. The 2005 Agreement is the Agreement Jeld-Wen argues Ribas is now violating. The Agreement's confidentiality portion states:

> Stockholder recognizes and acknowledges that Company
> maintains trade secrets and proprietary information and

2  - ORDER

know-how, including information relating to cost data, formulas, patterns, compilations, programs, devices, Company policies and procedures and other financial data ("Confidential Information"). Stockholder acknowledges that this information represents valuable, special and unique assets of Company's business. Stockholder will in perpetuity or for the longest duration allowed by law treat such information as strictly confidential and as trade secrets and not discuss or disclose it to any outside party under any circumstances whatsoever.

Stockholder Agreement, ¶ 5.

The 2005 Agreement also contained a Restrictive Covenant:

Stockholder agrees and acknowledges that any unauthorized disclosure or release of Confidential Information in any form would irreparably harm Company. Furthermore, Stockholder agrees that Adjusted Book Value includes Goodwill. Consequently, to protect Company's Confidential Information and goodwill, and in exchange for mutual promises contained herein, Stockholder agrees that during Stockholder's holding of Shares and three years following the repurchase of the Shares, Stockholder shall not:

  a.  directly or indirectly compete with Company (or any of its affiliates) or otherwise approach, solicit or accept business from any customer, supplier or vendor of Company (or any of its affiliates) in direct or indirect competition with Company (or any of its affiliates);

  b.  approach, counsel or attempt to induce any person who is then in the employ of Company (or its affiliates) to leave his or her employ or employ or attempt to employ any such person or any person who at any time during the preceding twelve (12) months was in the employ of Company (or its affiliates);

  c.  aid, assist or counsel any other person, firm or corporation to do any of the above.

Stockholder Agreement, ¶ 6.

Unlike the 2003 stockholder agreement, Jeld-Wen's memo to shareholders explaining the new 2005 Agreement did not state shareholders had the option of not signing the 2005 Agreement. Instead, the memo simply tells the stockholder to sign the new agreement and return it to HR. April 25, 2005 Memo, 1.

The 2005 memo explained the confidentiality and covenant not to compete provisions:

> Our plan over the next 2 years is to provide more information to our shareholders. Therefore, we have added a confidentiality paragraph in order to provide better protection for our confidential proprietary information and trade secrets. In addition, we have added a non-compete provision, which mirrors the 3-year period we have in our management agreement. We feel it is important that our key managers commit to not go to work for the competition and these provisions are more enforceable in a shareholder agreement than a management agreement.

April 25, 2005 Memo, 2, ¶ 5.

In 2007, Ribas became Chairman of the Board of Directors of Norma.

In April 2010, Ribas and Norma entered into a severance agreement, terminating Ribas' employment. Under the severance agreement, Norma paid Ribas 240,000 euros. Jeld-Wen was not a party to the 2010 severance agreement. In June 2010, pursuant to the 2005 Agreement, Jeld-Wen repurchased Ribas' shares of stock for $114,000.

In early 2011, Ribas (apparently) began working for Artevi, Norma's main competitor in Spain. Several Norma employees

4  - ORDER

observed Ribas staffing a Artevi booth at a May 2011 trade show
in Barcelona. Norma alleges it has "since learned from its
employees and agents, or from customers and suppliers themselves,
that Norma's customers are doing business with Artevi because
Ribas is affiliated with that company. Norma lists four former
customers now doing business with Artevi. Norma also lists other
customers who have been contacted by Artevi.

### STANDARDS

A party seeking a preliminary injunction "must establish
that he is likely to succeed on the merits, that he is likely to
suffer irreparable harm in the absence of preliminary relief,
that the balance of equities tips in his favor, and that an
injunction is in the public interest." Winter v. Natural
Resources Defense Council, Inc., 129 S. Ct. 365, 374 (2008). The
plaintiff "must establish that irreparable harm is likely, not
just possible." Alliance for the Wild Rockies v. Cottrell, 2011
WL 208360, at *3 (9th Cir. Jan. 25, 2011) (emphasis in original).
The court may apply a sliding scale test, under which the party
seeking an injunction must demonstrate a greater threat of
irreparable harm as the probability of success on the merits
decreases. Id. at *4. The court's decision on a motion for a
preliminary injunction is not a ruling on the merits. See Sierra
On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th
Cir. 1984).

5  - ORDER

## DISCUSSION

### 1.   Personal Jurisdiction

As noted, Ribas argues this court lacks personal jurisdiction over him. A party may waive its defense based on lack of personal jurisdiction. Insurance Corp. of Ireland, Ltd. v. Compagnie, 456 U.S. 694, 703-05 (1982). The 2005 Agreement states any claim relating in any way to the Agreement "shall be settled in a court of competent jurisdiction in the State of Oregon. Each party consents and agrees to submit to the exclusive jurisdiction of said court and that the County of Klamath shall be designated as the venue for resolving any claim arising hereunder." As Jeld-Wen's claim alleges a breach of the 2005 Agreement, Ribas waived any personal jurisdiction defense upon signing the 2005 Agreement. Therefore, Ribas' motion to dismiss for lack of personal jurisdiction (#13) is DENIED.

### 2.   Preliminary Injunction

ORS 653.295 severely limits the enforcement of a noncompetition agreement between an employer and employee. Assuming the 2005 Agreement is not subject to the restrictions of ORS 653.295, the Agreement is indisputably a covenant in restraint of trade. North Pac. Lumber Co. v. Moore, 275 Or 359, 364 (1976). Therefore, to be enforceable under Oregon law, the contract must: (1) be restricted in operation as to time or place; (2) be on some good consideration; and (3) be reasonable.

6 - ORDER

Nike, Inc. v. McCarthy, 379 F.3d 576, 584 (9th Cir. 2004)(citing
Eldridge v. Johnston, 195 Or. 379, 245 P.2d 239, 250 (1952). In
Oregon, a general, unrestricted contract in restraint of trade is
"clearly against public policy." Eldridge, 195 Or. at 404.

The Oregon Supreme Court upheld the ten-year non-compete
covenant at issue in Eldridge only as to four counties within the
state of Oregon.  Id. at 409. Ribas has worked in the Spanish
door industry for the past 20 years. The noncompetition agreement
here will force Ribas to remain unemployed for three years and
prevent Ribas from competing "directly or indirectly" with Jeld-
Wen or any of Jeld-Wen's subsidiaries. At oral argument, Jeld-Wen
stated it had representatives in France as well. It is unclear if
Ribas could work in the door business in any location in the
world without, in Jeld-Wen's view, competing "directly or
indirectly" with Jeld-Wen or any subsidiary of Jeld-Wen. I
conclude the 2005 Agreement is not restricted as to place.

Contracts are severable and courts are able to limit
enforcement of unreasonable non-compete agreements to the extent
that they are reasonable. Eldridge, 195 Or. at 409.  However, In
cases where the non-compete agreements are over-broad to the
point where enforcement becomes unreasonable, some courts advise
voiding the entire agreement, rather than simply striking down
the most egregious clauses. Konecranes, Inc. v. Sinclair, 340 F.
Supp. 2d 1131 (D. Or. 2004). Jeld-Wen apparently seeks to

7  - ORDER

prohibit Ribas from working, in any capacity, in the sole business, and in the sole location, Ribas has worked in the past 20 years. Such a restriction is unreasonable.

Although not necessary to my conclusions, I question whether the 2005 Agreement was supported by good consideration. Jeld-Wen argues that pursuant to the 2005 Agreement, Ribas gained access to more company secrets and secured the opportunity to purchase more stock. Ribas, however, never purchased additional stock. Additionally, Jeld-Wen provided no evidence that it - as opposed to Norma - ever provided any "Confidential Information" to Ribas.

As noted, Jeld-Wen informed stockholders that starting in 2005, Jeld-Wen intended to share additional "Confidential Information" with shareholders. April 25, 2005 Memo, 2, ¶ 5; Stockholder Agreement, ¶ 5. Jeld-Wen appears to simply assume the court will acknowledge Ribas received "Confidential Information" from Jeld-Wen. The customer lists and pricing information which seem to lay at the heart of this case, however, appear to belong not to Jeld-Wen, but to Norma. Jeld-Wen repeatedly distanced itself from Norma, noting four degrees of separation separate Jeld-Wen from Norma. Although taking pains to distance itself from Norma, Jeld-Wen seems to merge the two companies for the purposes of "Confidential Information" and damages.

The party in whose favor the covenant cuts must show a "legitimate interest" entitled to protection, North Pac. Lumber,

8  - ORDER

275 Or. at 364, and the burden of proof is upon the employer to establish the existence of trade secrets, information or relationships which pertain particularly to the employer, or other special circumstances sufficient to justify enforcement of such a covenant. Rem Metals Corp. v. Logan, 278 Or. 715, 721-22 (1977). Protectable interests include "information pertaining especially to the employer's business," such as client information, customer lists and purchase history. Nike, 379 F.3d at 585. As noted, Jeld-Wen produced no evidence that it - as opposed to Norma - ever provided any "Confidential Information" to Ribas.

Additionally, Jeld-Wen provided no evidence that it - as opposed to Norma - conducts any business at all in Spain. As all of Ribas' actions occur in Spain, I am not convinced that Jeld-Wen has demonstrated a likelihood of establishing any damages from Ribas' alleged breach. A current suit in Spanish courts by Norma against Ribas and Artevi alleging unfair competition seems more appropriate for any damages from allegedly improperly stealing Norma's clients and employees.

I conclude Jeld-Wen failed to demonstrate either the likelihood of success on the merits, or the likelihood of irreparable harm absent an injunction. My conclusions here are not rulings on the merits. See Sierra On-Line, 739 F.2d at 1422.

9  - ORDER

**CONCLUSION**

Jeld-Wen's request for a preliminary injunction (#5) is DENIED. Jaime Ribas motion to dismiss for lack of personal jurisdiction (#13) is DENIED.

IT IS SO ORDERED.

DATED this ___/___ day of August, 2011.

OWEN M. PANNER
U.S. DISTRICT JUDGE

10 - ORDER